```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
JOSE RODRIGUEZ,                                                :
                                                               :
                                    Petitioner,                :
                                                               :        MEMORANDUM & ORDER
                  -against-                                    :
                                                               :        2:18-CV-07196 (ENV)
JAMIE LAMANNA                                                  :
                                                               :
                                    Respondent.                :
------------------------------------------------------------- x
```

VITALIANO, D.J.

Petitioner Jose Rodriguez is before the court, *pro se*, on his petition for a writ of *habeas corpus*, pursuant to 28 U.S.C. § 2254. Pet., Dkt. 1. For the reasons set forth below, the writ is denied and Rodriguez's petition is dismissed.

## Background

In the early afternoon of November 17, 2013, Rodriguez and his girlfriend, Kimberly Sellitto, got into an argument in their apartment in Ridge, Suffolk County.[1] R., Dkt. 11, at 45. According to Rodriguez, the two were arguing because Rodriguez had failed to return Sellitto's phone calls earlier that morning. *Id.* at 46. The argument rapidly grew more hostile, and, when it reached a fever pitch, Rodriguez grabbed his rifle and shot Sellitto, killing her. *Id.*

Shortly after the shooting, the police were called. *Id.* at 45. When the police got to Rodriguez's residence, he barricaded himself in his apartment with his two children. *Id.* Emergency responders eventually negotiated the release of the two children, but Rodriguez remained holed up and fired his rifle through his apartment window at an occupied police car.

---

[1] Because Rodriguez was convicted, the Court recites the facts in the light most favorable to the verdict. *See Garbutt v. Conway*, 668 F.3d 79, 80 (2d Cir. 2012).

1

*Id*. Fifteen minutes after firing the shot, however, Rodriguez abandoned this tact and decided to walk out of his apartment and surrender. *Id*. He was then taken into custody and charged with murder in the second degree and attempted aggravated murder, both of which are class "A" felonies. *Id*. at 47.

On December 2, 2015, Rodriguez appeared with counsel before the Supreme Court, Suffolk County. *Id*. at 51. After a series of negotiations with the People and upon conferring with counsel, Rodriguez agreed to plead guilty to second-degree murder and attempted aggravated murder in exchange for concurrent terms of incarceration of 25 years to life and 30 years to life. *Id*. at 56–57. The trial judge then began the plea colloquy by asking Rodriguez whether he had sufficient time to discuss the offer with counsel and did indeed want to plead guilty, which Rodriquez affirmed. *Id*. at 57. Rodriguez also affirmed that he had not consumed alcoholic or narcotic substances in the past 24 hours, that he was satisfied with his representation by counsel, that he understood his guilty plea had the same effect as a trial verdict of guilty and that he was waiving certain rights. *Id*. at 57–58. Further, Rodriguez waived his right to appeal, affirming that he had discussed his appeal waiver with counsel and that the waiver was voluntary. *Id*. at 59. Rodriguez signed a written appeal waiver in front of the court. *Id*. at 62. After making an allocution satisfactory to the court, Rodriguez entered a plea of guilty for second-degree murder and attempted aggravated murder. *Id*. at 65.

On January 8, 2016, Rodriguez again appeared in Supreme Court for his sentencing hearing. *Id*. at 69–70. His counsel began by informing the court that Rodriguez wished, as part of the pre-sentence investigation, there had been further exploration of his psychological issues and the psychological treatment he had received. *Id*. at 71. Attorney McElwee also acknowledged that he was aware Rodriguez had previously discussed these issues with his original attorney, who he

2

understood had contacted but never retained a doctor. *Id*. Nonetheless, although the details were not discussed during the sentencing hearing, Rodriguez's pre-sentence investigation report elaborated on the nature of some of these issues. In particular, the report stated that Rodriguez was hospitalized several times as a teenager following suicide attempts and once as an adult for suicidal ideations, had been diagnosed with bipolar disorder and depression, attended weekly counseling sessions for a period of years, had used medication for these diagnoses, and was prescribed psychotropic medications while incarcerated. *Id*. at 140.

In any event, despite Rodriguez's apparent misgivings, counsel made clear that Rodriguez still wanted to plead guilty to spare his children and the victims' families from "any further issues." *Id*. at 71–72. After the victim impact statements, Rodriguez said that he was sorry for what he had done because he loved Sellitto's family, and that he hoped they would forgive him some day. *Id*. at 98. As prescribed in the plea bargain, the court then sentenced Rodriguez to a term of 25 years to life on the charge of murder in the second degree, and 30 years to life on the charge of attempted aggravated murder, with all sentences to run concurrently. *Id*. at 100.

Notwithstanding his express waiver of appellate rights, on January 11, 2016, Rodriguez appealed to the Appellate Division, Second Department, arguing that (1) he did not validly waive his right to appeal because the trial court did not adequately distinguish his waiver of appellate rights from the rights he forfeited by pleading guilty, (2) his plea of guilty was not knowing, voluntary, or intelligent because the trial court failed to inquire into his mental capacity and competence prior to imposition of his sentence and (3) the sentence imposed was excessive and should be reduced because of his history of mental illness. *Id*. at 107, 118, 123, 126. On July 26, 2017, the Appellate Division rejected Rodriguez's arguments and affirmed the judgment. *People v. Rodriguez*, 152 A.D.3d 800, 801, 60 N.Y.S.3d 191 (2d Dep't 2017). On October 5,

2017, the New York Court of Appeals denied Rodriguez's application for leave to appeal. *People v. Rodriguez*, 30 N.Y.3d 982, 89 N.E.3d 1265 (2017). On December 17, 2018, Rodriguez brought the instant petition. Pet. at 1.

## Legal Standard

Post-conviction federal *habeas* relief is governed by the overarching reach of the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"). Under the AEDPA, a writ of *habeas corpus* shall not issue with respect to any claim that was adjudicated on the merits in state court unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established federal law" as determined by the United States Supreme Court, or, (2) "was based on an unreasonable determination of the facts" in light of the evidence presented. 28 U.S.C. § 2254(d); *see also Gutierrez v. McGinnis*, 389 F.3d 300, 304 (2d Cir. 2004) (describing this standard as "AEDPA deference"). AEDPA's deferential review applies whenever a state court disposes of a state prisoner's federal claim on the merits, regardless of whether it gives reasons for its determination or refers to federal law in its decision. *Harrington v. Richter*, 562 U.S. 86, 99, 131 S. Ct. 770, 785, 178 L. Ed. 2d 624 (2011); *see also Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001).

That such deference is to be shown is hardly surprising. Circumscription of the power of districts courts to grant *habeas* relief to state prisoners is exactly what Congress intended. "Section 2254(d) reflects the view that *habeas corpus* is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102–03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n.5, 99 S. Ct. 2781, 2796, 61 L. Ed. 2d 560 (1979)). Review under AEDPA "demands that state-court decisions be given the benefit of the doubt." *Hardy v. Cross*, 565 U.S. 65, 66, 132 S. Ct.

4

490, 491, 181 L. Ed. 2d 468 (2011) (per curium) (internal quotation marks omitted). Where AEDPA deference applies, "a state court's findings of fact are 'presumed to be correct' unless rebutted 'by clear and convincing evidence.'" *Drake v. Portuondo*, 553 F.3d 230, 239 (2d Cir. 2009) (quoting 28 U.S.C. § 2254(e)(1)).

Given these ground rules, it is obvious that *habeas* jurisprudence is tightly confined. A state court decision is "contrary to clearly established federal law" within the meaning of § 2254(d) only if it contradicts relevant Supreme Court precedent or arrives at a different conclusion based on "materially indistinguishable" facts. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S. Ct. 1495, 1519, 146 L. Ed. 2d 389 (2000). For the purposes of federal *habeas* review, "clearly established federal law" refers to the holdings, as opposed to *dicta*, of Supreme Court decisions in effect at the time of the relevant state court decision. *Id*. at 412. Likewise, a state court decision involves an "unreasonable application" of federal law if it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of" the case. *Id.* at 413. In construing and applying federal law, even erroneous state court decisions, if deemed reasonable, will survive *habeas* review. *Id.* at 411.

But, there is a caution: the state court decision need not be "so far off the mark as to suggest judicial incompetence" before *habeas* relief may be granted. *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted). "A federal court may reverse a state court ruling only where it was 'so lacking in justification that there [is no] possibility for fairminded disagreement.'" *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (quoting *Harrington*, 131 S. Ct. at 786–87).

5

Discussion

I.     Competency Hearing Claim

Rodriguez first argues that his guilty plea was not knowing, voluntary, and intelligent because the trial court did not inquire into his mental capacity before imposing his sentence. Pet.'s Mem., Dkt. 23, at 1.

As an initial matter, Rodriguez's assertion that the Appellate Division's ruling on this claim is not entitled to AEDPA deference is entirely without merit as a matter of fact and as a matter of law. *Id.*  To make this point, Rodriguez spotlights that the court failed to cite or apply federal law, but a state court need not explicitly refer to the federal claim or cite relevant federal case law to dispose of that claim on the merits. *Sellan*, 261 F.3d at 312.  Indeed, challenges to the voluntariness of a guilty plea are firmly within the mainstream of due process claims. *See Velasquez v. Ercole*, 878 F. Supp. 2d 387, 401 (E.D.N.Y. 2012) ("A conviction which is based upon an involuntary plea of guilty is inconsistent with due process of law and is subject to collateral attack by federal *habeas corpus*."); *see also Daye v. Attorney General of State of New York*, 696 F.2d 186, 194 (2d Cir. 1982) (noting that state courts are alerted to the constitutional nature of a claim when the claim rests on a factual matrix that is "well within the mainstream of due process adjudication") (quoting *Johnson v. Metz*, 609 F.2d 1052, 1057 (2d Cir. 1979) (Newman, J., concurring)).  Moreover, in rejecting Rodriguez's claim, the Appellate Division explicitly relied on *People v. Catapano*, 73 A.D.2d 975, 424 N.Y.S.2d 242 (2d Dep't 1980) and *People v. Keiser*, 100 A.D.3d 927, 954 N.Y.S.2d 184 (2d Dep't 2012), both of which trace back to the constitutional protections announced in *Pate v. Robinson*, 383 U.S. 375, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966) (holding that defendant's constitutional rights to due process and a fair trial were violated when he failed to receive a competence hearing.); *see also Silverstein v.*

*Henderson*, 706 F.2d 361, 367 (2d Cir. 1983) (observing that "New York law provides the procedural protection *Pate* requires"). Accordingly, the Appellate Division disposed of Rodriguez's federal claim on the merits, and its ruling is entitled to AEDPA deference.

This claim fares no better upon a substantive review of its asserted merits. Under the Due Process Clause of the Constitution, a trial court may accept a guilty plea only after an affirmative showing that the plea is entered knowingly and voluntarily. *See Godinez v. Moran*, 509 U.S. 389, 400, 113 S. Ct. 2680, 2687, 125 L. Ed. 2d 321 (1993). Pertinently, a plea is not knowing and voluntary if defendant is not competent; that is, if he does not have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and have "a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402, 80 S. Ct. 788, 789, 4 L. Ed. 2d 824 (1960) (per curiam). But, a trial court need not hold a competency hearing unless there is a reasonable ground for it to conclude that a defendant may not be competent. *King v. Cunningham*, 442 F. Supp. 2d 171, 185 (S.D.N.Y. 2006) (quoting *Harris v. Kuhlmann*, 346 F.3d 330, 350 (2d Cir. 2003)). There are "no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed," but relevant factors include evidence of defendant's irrational behavior, demeanor, and any prior medical opinion on competence. *Sanchez v. Colvin*, No. 15-CV-9957 (PKC) (AJP), 2016 WL 5930150, at *12 (S.D.N.Y. Oct. 7, 2016) (quoting *Drope v. Missouri*, 420 U.S. 162, 180, 95 S. Ct. 896, 908, 43 L. Ed. 2d 103 (1975)), *report and recommendation adopted*, No. 15-CV-9957 (PKC) (AJP), 2017 WL 1383790 (S.D.N.Y. Apr. 14, 2017). Strong evidence of mental illness can serve as reasonable ground for evaluating a defendant's competence, but some degree of mental illness should not be equated with incompetence. *See Johnson v. Keane*, 974 F. Supp. 225, 233 (S.D.N.Y. 1997). A state court's finding of

competency is an issue of fact which is entitled to a presumption of correctness on *habeas* review, requiring clear and convincing evidence to overturn. *Demosthenes v. Baal*, 495 U.S. 731, 735, 110 S. Ct. 2223, 109 L. Ed. 2d 762 (1990); *see also Harris*, 346 F.3d at 351–52.

Of particular relevance here is the approach taken in *Lopez v. Walker*, 239 F. Supp. 2d 368 (S.D.N.Y. 2003). There, a state trial court accepted petitioner's guilty plea and imposed the sentence without conducting a competency hearing even though the pre-sentence investigation report detailed petitioner's suicide attempts, prior mental health hospitalizations, and use of psychiatric drugs. *Id.* at 370–72, 374. In his *habeas* petition, petitioner claimed that his guilty plea was not knowing and voluntary and that the state trial court should have held a competency hearing. *Id*. at 373. But, despite the information in the pre-sentence investigation report, the district court found it was well within the state trial court's discretion not to hold a competency hearing because petitioner presented to the court as coherent and rational, actively participated in his proceedings, and never actually requested a competency hearing. *Id*. at 374–75.

Here, the record reflects that Rodriguez's behavior presented no reason for the court to believe he was incompetent or that his plea was not knowing or voluntary. Indeed, Rodriguez was an active participant in his defense. He asked his counsel to seek a "flat bid" from the prosecution, a determinate term of incarceration of 40 years, before accepting the People's offer for a recommendation of concurrent sentences of 25 years to life and 30 years to life imprisonment. R. at 53–57. Furthermore, Rodriguez engaged in a lengthy plea colloquy during which he affirmed to the court that he wished to accept the conditional sentence and that he understood the rights he would forfeit with a guilty plea. *Id.* at 56–61. Although his responses were monosyllabic, his behavior and responses were consistent with one who understands the proceedings against him. Moreover, and quite significantly, as the record memorializes, neither

8

of the two lawyers who appeared on behalf of Rodriguez suggested that Rodriguez was incompetent to stand trial, assist in his own defense or enter a guilty plea; nor did either of them at any time, during the pendency of these proceedings in the trial court through the imposition of sentence, request that a competency hearing be ordered.  *See id*. at 51–67; *see also Pate*, 383 U.S. at 179 n.13.

As noted earlier, the pre-sentence investigation report does record Rodriguez's psychiatric history, including episodes of suicidal ideation and various treatment modalities. Properly before the trial court, it did not change the outcome of petitioner's late-starting competency claim; nor did it compel a changed outcome.  Although the report detailed a history of prior hospitalizations, mental health therapy, suicide attempts, and use of psychiatric medication, this evidence alone does not trigger a right to a competency hearing when, otherwise, there is no indication of incompetence.[2]  *Id*. at 140; *see Moore v. Kirkpatrick*, No. 09-CV-0457 (MAT), 2011 WL 1233124, at *11–12 (W.D.N.Y. Mar. 30, 2011) (state court finding of competency upheld when defendant appeared coherent at trial, despite taking both anti-depressant and anti-psychotic medications).

Nor is relief warranted by the fact that his counsel told the court at sentencing that Rodriguez "wish[ed] that [they] had further explored potential psychological issues he suffered." R. at 71.  Despite Rodriguez's misgivings, he stood in silence as his counsel advised the court

---

[2] As a sidebar, the parties quibble over whether Rodriguez has in fact exhausted the component of his claim related to his use of psychiatric medication.  *See* Resp.'s Sur-Reply Mem., Dkt. 25, at 5.  The question is academic.  For the same substantive reasons that deference should not be disturbed with regard to the rejection of the competency hearing claim by the state courts, Rodriguez would lose on this narrower claim even if he somehow fought his way past arguable procedural default.  *See Blalock v. Smith*, No. 08-CV-7528 (JPO), 2012 WL 3283439, at *4 (S.D.N.Y. Aug. 13, 2012) (declining to rule on procedural issue because petitioner would fail on the merits).

that Rodriguez nevertheless did not want to withdraw his plea because he "did not wish to put his children or the families of the victims through any further issues." *Id*. at 71–72. Furthermore, reinforcing the advice counsel had just given the trial court that Rodriguez did not wish to withdraw his plea, Rodriguez apologized in open court to the victims of his crime for what he had done. *Id*. at 98. On this record, Rodriguez's statements and behavior provided no reasonable basis for doubting his competence, and Rodriguez has failed to produce clear and convincing evidence to the contrary. Actually, the whimper-less appearance of Rodriguez at the sentencing hearing speaks powerfully to the absence of error in the trial court's decision not to order a competency hearing. None of the alarms were tripped. The trial court's decision to go forward without ordering a competency hearing was not inappropriate, and the Appellate Division's determination to that effect is entitled to deference. Accordingly, his claim on this ground is denied.

II.   Excessive Sentence Claim

Next, Rodriguez claims that his concurrent sentences of 25 years to life and 30 years to life should be reduced because they are harsh and excessive. Pet.'s Mem. at 14. This claim also fails. First, Rodriguez may not challenge his sentence because he waived his right to appeal it. *See Rodriguez*, 152 A.D.3d at 800–01. Though Rodriguez argues that his waiver is invalid, the validity of his waiver is a matter of state law, and therefore beyond the reach of *habeas* review. *See e.g., Veliz v. Griffin*, No. 17-CV-0824 (BMC), 2017 WL 836560, at *2 (E.D.N.Y. Mar. 2, 2017).[3]

---

[3] Indeed, even if his waiver challenge were of a federal nature, Rodriguez would still be unable to prevail because *habeas* relief requires a violation of "clearly established Federal law, as determined by the Supreme Court of the United States," and "the Supreme Court has never addressed the requirements of a valid waiver to appeal a sentence." *Veliz*, 2017 WL 836560, at *3.

Furthermore, even if Rodriguez's excessive sentence claim were not barred by his waiver, it would still fall short. An excessive sentence claim will not warrant federal *habeas* relief unless it falls outside of the statutory range prescribed by state law, and Rodriguez's sentence fits comfortably within the statutory range for both of the offenses to which he pleaded guilty. *See White v. Keane,* 969 F.2d 1381, 1383 (2d Cir. 1992) (per curiam); *see also* N.Y.P.L. §§ 60.05(2); 70.00(1), (2)(a), (3)(a)(i)(c). Accordingly, Rodriguez's claim on this ground, too, must be denied.

## Conclusion

For the foregoing reasons, a writ of *habeas corpus* is denied, and the petition is dismissed.

Since petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. *See* 28 U.S.C. § 2253(c)(2). The Court certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Memorandum and Order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

The Clerk of Court is directed to mail a copy of the Memorandum and Order to petitioner, to enter judgment accordingly and to close this case.

So Ordered.

Dated:  Brooklyn, New York
        July 26, 2020

                                                  /s/ENV
                                        _____
                                        ERIC N. VITALIANO
                                        United States District Judge